Clerk may call the next case. Thank you. Counsel, before you begin, have the parties visited with our mediation office? No, Judge. We've received no notice of that. Well, you don't have to. It's a service that's available to you, still available to you. Thank you, Judge. Judge, I've asked to reserve three minutes. That's fine. Enter your appearance and proceed. My name is Timothy Farrant. I represent Judge Linda Davis. She's the Chief Judge of the 41B District Court. The plaintiffs in this case, as you know, are former employees of that court, and the State Court Administrator conducted, in 2004, an investigation of the court. At the conclusion of that investigation, she reported to Judge Davis and the State Court Administrator that the plaintiffs lied, withheld information, and attempted to coerce others to lie during her investigation. Judge Davis was advised by the State Court Administrator that she should terminate those three employees. She did so. The three employees filed this lawsuit claiming that they had a due process right to continued employment. And the issue that we're here on today is a qualified immunity issue. The question is whether Judge Davis or any reasonable official in her position could have concluded that the plaintiffs were at-will employees and therefore had no right to due process, and whether a reasonable official in Judge Davis' position could have relied upon the State Court Administrator's office who concluded that there was, in fact, good cause to terminate the three plaintiffs. Now, you're all very familiar with the Qualified Immunity Standard. It's a three-step approach. We ask whether there's a constitutional right that was violated, whether that constitutional right was clearly established, and whether the judge knowingly and intentionally violated that right. Here, as it relates to whether there was a constitutional right, the issue is whether the plaintiffs had a protected property interest in employment as defined by Michigan law, which makes this a little bit unique for the court. It has to review Michigan law as it relates to that interest. As to whether it's clearly established, the court has to decide whether any reasonable official in Judge Davis' position could have concluded that these were at-will employees. Now, the trial court clearly applied the wrong analysis. We petitioned the court for Qualified Immunity both before and after trial, and in the after-trial analysis, the judge said, after reviewing all of the evidence in the case, the court cannot conclude that no reasonable juror could find just-cause employment. That is the exact opposite of the standard that this court has to apply. The standard is whether any reasonable chief judge, sitting as an administrator in Judge Davis' position, could have concluded that these were at-will employees, not whether any juror could find the opposite. That's the standard that Judge Borman applied, and I'm sorry, that's the inappropriate standard here. In fact, that standard that Judge Borman applied demonstrates clearly that there was evidence to support the verdict, but it also demonstrates that that evidence would create the situation where reasonable officials would find otherwise, and therefore it demonstrates that Judge Davis is entitled to Qualified Immunity as a matter of law. The question regarding due process, was there a due process right violated? As I indicated, we've got to examine Michigan law. Michigan presumes that employment relationships are at-will relationships, and in order to avoid that, the plaintiffs in this case are not claiming that there's a written policy or procedure that says they're just-cause employees. They're arguing there was an implied legitimate expectation of such employment, and to find a legitimate expectation, the court examines policy statements or practices of the court that apply to discharge, not discipline, and that contain clear, unambiguous promises of just-cause employment. They have to be communicated to the workforce in general, and they have to be understood by every member of the workforce. In fact, when this court had this case pretrial, it remanded the case back to trial. The issue that was decided the first time this case was before this court was whether there was a fact issue as to the plaintiff's protected property interest in continued employment. So we wouldn't be revisiting that issue, which is the issue you're now addressing, as I understand this part of the argument. The first issue you mentioned, i.e., whether a reasonable employer might conclude that these were at-will as opposed to just-cause employees, is an issue I do not understand to be decided by our court previously. But the issue you're talking about now, as I understand it, was decided. So I wouldn't think it would be too productive to spend your time on something we're not free to revisit. Well, what the court decided earlier was there was an issue of fact as to whether they were just-cause or at-will employees, and the court said this goes back to the trial court. The proof at trial did not differ materially, did it, from the proof that was before the court on the summary judgment motion? Exactly. That's exactly my point. Well, I mean, so submitting that case, wouldn't of necessity a review of the trial court's decision to submit that issue to the jury involve our concluding that the precedent of our court was wrong? I mean, we can't do that. No, no, no, no. All right, well, then you and I aren't communicating real well on this, so explain to me how we get there from here. Or we get here from there. Because you're deciding a qualified immunity issue, the question that this court decided earlier, that there was a fact issue regarding plaintiff's employment, demonstrates that qualified immunity is appropriate because that fact issue demonstrates that reasonable officials could conclude otherwise. They're two different issues. Yes. The issue of whether or not these employees were in fact just cause or at will employees is one issue. Yes. I understand that to have been the issue that our court was concerned with earlier. The other issue, it seems to me, is the issue of whether it was reasonable for Judge Davis to conclude that they were at will employees, even though they might in fact have been just cause employees. Right. And that's the qualified immunity one, and that's the stronger argument because the other argument, as I understand it, is precluded. So, you know, you can't make it stronger if it's already off the table. Except that with qualified immunity, the court looks at whether that right was clearly established. And by this court concluding there was a fact question and the facts haven't changed, it was not therefore clearly established, just because the jury decided. Well, it's clearly established that if you have a property interest in continued employment, then you're entitled to certain procedural safeguards. Correct. Which were not received in this case. Correct. And the question is... So what's not clearly established about that? No, the question is not... So the question is whether she was reasonable to put them in one category as opposed to the other. Correct. And because we're dealing with the state law legitimate expectation theory, then the question becomes whether reasonable people in that position, in her position, could look at it in different ways. And if we had a written policy or procedure that said they're just cause, the courts have clearly said you can't ignore that. But in our case, we had this legitimate expectation theory. And this legitimate expectation theory is based on an interpretation of a practice that she knew nothing about, which is exactly where you're going. Would a reasonable official have known about it? And therefore, whether she could conclude as a matter of law they were at-will employees. So the court has to do both. It has to interpret the existing law under state law and then determine whether it was clearly established for Judge Davis. I would suggest to you that several of those steps really aren't pertinent at this point. But whatever you think. I mean, you and I don't have to agree on that. As it relates to the issue that you've raised, Judge, the question then becomes was it clearly established to Judge Davis or a reasonable official in her capacity? And whether it was clearly established, this is the background. At pretrial, the court held that as a matter of law, these were at-will employees. Then this court remanded and said, no, there's an issue of fact as to whether they're at-will employees. And then we went to trial, and the evidence at trial looks like the following. There's no written employment policies or procedures for Judge Davis to look at. There's a court consolidation that's going on between the two buildings of the 41B District Court. She meets with Judge Cannon and says, give me all of your policies and procedures so we can decide how the employees are going to be situated. No policies or procedures are provided. The state court administrator meets with Judge Cannon, asks the same information, asks the same from his magistrate. No policies or procedures are provided. The state court administrator comes in and conducts an investigation of the court. And during the investigation of the court, the state court administrator interviews every employee. Not one employee provides a policy. Not one employee provides a procedure. They interview the plaintiffs in this case, and none of the plaintiffs provide a policy or procedure in the case. And she concludes, she's an attorney, trained attorney from the state court administrator's office, that these are at-will employees. Didn't one of the plaintiffs at the time she was terminated, maybe Engler, tell Chief Judge Davis that she, Engler, believed she was a just cause employee? No, what she said was, we follow Clinton Township policy when asked the specific question if there was a harassment policy. She said, we follow Clinton Township policy. And that was the only indication of anybody talking about a policy or procedure that the court maintained. And your argument is that this policy was ambiguous. It was unclear. Well, the policy, the claim was that the policy she was talking about was a harassment policy. It had nothing to do with termination. It could not articulate a just cause practice or procedure. Is there any dispute about that being what was said? I don't think there's any dispute about what was said. I took it directly from her testimony. She was asked about the harassment policy, and she said there was, the court had adopted Clinton Township's policies relating to harassment. But she provided no other policy or procedure. But that's also what she said that she said to Judge Davis upon her termination. I thought Judge Cato asked about what. I guess the question, what is it that she said to Judge Davis? Maybe that's the easiest way to ask the question. She claimed that she told Judge Davis she was a just cause employee. She claimed that. She said that at trial, at the time of termination. She claimed that she said that to her. And I would indicate to the court that when you're talking about a legitimate expectation theory, someone saying that to you is totally irrelevant. It has to be in a policy or procedure that's communicated to every employee of the court. That's what this case is about. Wouldn't the more pertinent inquiry be whether that was sufficient to put Judge Davis on further notice that she should inquire further and whether it would still be reasonable for her to persist in her belief that these were at-will employees? I mean, isn't that the more pertinent inquiry that arises from that question? Well, the question is whether she knowingly and intentionally violated the Constitution under a qualified immunity analysis. And that's what Judge Borman hinted to. He said, look, even though there's no evidence that she knew, and he went through all of the evidence, and he said even though there's no evidence that she knew, what I'm going to hold her to is this standard. She should have asked further questions or should have investigated further. And I would submit to you that had she investigated further, she could have talked to Mr. Towner, who was the attorney who represented Judge Cannon and was the labor attorney for Clinton Township, and he would have told her unequivocally, these are at-will employees, there are no policies or procedures. In fact, I created a manual for Judge Cannon, which he has yet to implement, that says 19 times these are at-will employees. She could have inquired further as to the deputy court administrators, who both testified in this case that these were at-will employees. She would have found out that a year prior the court conducted a discipline procedure where they said these are at-will employees. Wait a minute. So the evidence at trial, if we're going to talk about this, the evidence at trial that they were just cause employees came from Judge Cannon. Yes. Who belatedly decided to describe a scenario where he would contend he had treated the employees as just cause employees and their testimony that they believed themselves to be just cause employees. Yes, Judge. And Judge Cannon... And that's the same evidence that was before our court. So that leads us back to, you know, Judge Batchelder dissented, but she was one and the majority had two and that... Right. No, no. But remember, what that court held back then was simply there was an issue of fact, not that they were just cause employees, simply that there was... I understand this, but... But now that the facts have all been fleshed out, we don't have to guess what the trial proofs are going to show. That's all before you right now. We know what the trial proofs are showing, and nothing else came forward at trial. I understand, but how do we go about... I mean, when the issue for whether there's a sufficient... there's sufficient to put the issue before the jury, when the state of the record and the state of the ruling are the same in both contexts, how do we revisit that? I mean, even though the trial record would supplant the summary judgment record, if the two are the same, how are we going to question the prior ruling of our court? Because what the jury decided, what this jury got to, the question that they got to was whether these were at will or just cause employees, not whether a reasonable official could have concluded otherwise. I don't disagree with you about that. I guess the point I'm having trouble with is why you continue to couch it in different terms from that. But because we're dealing with this obscure state practice that doesn't make it clear, then the question becomes not did the jury conclude, therefore, it must be... might make her conduct more reasonable. Absolutely. But, you know, it's not been clear to me that that's been the focus of your argument. Well, unfortunately, to make that argument, you've got to go back and look at the state law because the state law says what's clear or how you prove that legitimate expectation theory. And that's what makes this whole thing fuzzy. If this was a case whether there was existing policy or procedure, like the case law that the court cited to us, where there was an existing charter provision that the administrator simply ignored, whether there was an existing CBA that the administrator ignored, then it would be clear. But in our case, there was an ambiguous situation which Judge Davis knew nothing about, and therefore the question is whether it was reasonable for her to so conclude. And I submit to you that further investigation would not have clarified that process. It would have done the opposite. She would have learned from every other person at that court. That's not in the record. Well, it is, Judge. It is only to the extent that those people testified. Because they testified, Judge. Only because they testified. And what they said is that a year before we did this investigation and we called these people at-will employees and to say anything otherwise is just a farce. Mr. Farron, we've asked you a lot of questions, and we apologize for taking you over your time. You'll have your rebuttal time. Let's hear from the plaintiffs, and then you'll have your rebuttal. Thank you, Judge. That's okay. Good morning, and may it please the Court, Sarah Prescott, appearing on behalf of the plaintiffs' appellants cross-appellees. I think, Judge Gibbons, you and I are on the same page that some ground has been covered here, and decisively so. It was not a vain action for all of us to come down here in the 2007-2009 timeframe and for a panel to sit and decide. There was a jury triable fact question here on the underlying question of Just Cause v. At-Will. If Judge Davis, if we decide that Judge Davis was entitled to qualified immunity, you get SIP, right? I'm not sure what SIP would mean to you versus to me. She would not justify what the defendants have asked for, which is entry of judgment in their favor, because qualified immunity would not preclude reinstatement. It is an immunity that applies solely to the dollar judgment. Pardon? Yes, the dollar judgment, as opposed to entry of judgment because they would be entitled to reinstatement. So there was that wrinkle that we did point out, that entry of judgment would not be appropriate, no matter what the qualified immunity analysis. Let me talk about the qualified immunity analysis, since I think we generally agree that what has been covered has been covered. You know, Mr. Farran just spent some time up here saying, what if Judge Davis had done this and what if Judge Davis had done that? And guess what people would have said? Well, you know, what I didn't hear him say is, what if Judge Davis had picked up the phone and talked to the person she delegated to make the employment policy and personnel decisions here, who was Bill Cannon? She testified that she had a lot of respect for Bill Cannon. She testified she delegated the decisions to him on what to do in terms of policy in this court. She testified she understood, louder now, that you have to give a hearing if they're just cause employees. She testified that she understood there doesn't have to be a writing. Mr. Farran just stood up here and said, well, there's no writing. There's nothing for her to look at. She testified she understood there doesn't have to be a writing, that under Michigan law, you can look to the policies and the practices. So she understood all of that. Well, there was a lot of seeking information, and for one reason or another, Judge Cannon apparently chose not to respond under circumstances where one might believe it was reasonable for him to do so. Correct? Okay. Two different points. Judge Davis relies on a committee, some committee where people are trying to merge a court and they're asking for policies, and we don't know when that committee met or what happened. Well, she was in a meeting with Judge Cannon. Judge Cannon was very aware of what was going on, and the request for documents, according to the proof I've seen, was made in the meeting. So he had an awareness, did he not, of what was being sought, or at least there's proof in the record to that effect. With regard to the court merger, there's mixed testimony, and I think I know what you're asking about. Yes, Judge Davis, she alone, she's the only one who testified that there was a meeting and that a request was made for policies. Policies then were not shuttled between offices. That was with regard to the merger meeting. However, she also testified right in that same testimony to the contrary, that there wasn't a direct request made to the judges for the policies. She testified to two things. Well, that might be. I don't get what the import of that is, because she might have been expecting court personnel other than judges personally to send the policies, but certainly she'd expect to get them if they existed. And she'd expect the judges to have an interest in seeing that they were obtained. Okay, so let me answer that directly. No one has testified, it is undisputed, that when these termination decisions were being made, she picked up the phone and called Cannon. It's actually in the record to the contrary that she specifically didn't talk to Cannon. Is that what she didn't do? I mean, even though apparently the, I can't remember the exact position of the individual, the court administrator individual who was also doing, the professional, court professional who was assisting Judge Davis in doing the investigation. So if I understood the record correctly, all of that and the determination that these were at-will employees occurred at a time prior to the time when it was necessary to consider the issue of termination. And what Judge Davis did was not revisit that in light, was not revisit that at the time the issue of their termination came up, but rely on the prior determination that she and the court administrator had made that these were at-will employees. Is that fair or is that not fair? Well, it's unclear in the record is my only ability to answer that because at her deposition, Judge Davis said she didn't make a determination ever that these people were at-will. What did she say? At trial she says, oh yeah, they were at-will and I decided that, and she's impeached. So it's both at trial, but to answer your prior question, it is undisputed. Cannon says no one came to me. No one came to me with regard to, hey, we're about to fire some people. Let's get going on those policies. We haven't seen your policies. We asked you for them. People's lives are about to be changed. What do you say to that? I mean, that's undisputed that no one picked up the phone and called this gentleman and said, you're it. You're the decider. What's been the policy? We're about to fire. The second point, though, is, I mean, so you have to posit that you have a jurist who gets it, who comprehends the ramifications, who understands the import of what she's doing, who respects this man, who's been a colleague of this man, who delegated to this man, and who can't do that. But even if that's not persuasive to you, the second point we make is that Judge Davis need only announce to the employees, shoot an email, have an employee meeting, post it in the cafeteria, you're all at-will. And under Michigan law, that would have been it. They would have been at-will. Because under Michigan law, the employer can unilaterally establish policy and change policy at-will. Is there any evidence of anything that occurred post-termination that would be relevant to this inquiry we're talking about? I mean, for example, when they're terminated, did Judge Davis, I mean Judge Cannon, or anybody else seek to advise Judge Davis immediately that in his judgment these were not at-will employees? So two things. Right at the time of termination, and I forget which of you, and I apologize, brought to light this fact that Nancy Engler, at the time of termination, right then and there does say, pause, I'm just cause. Is there anything else? That is in the record. Number two. Judge Cannon, immediately upon hearing what's happened, his immediate reaction is, how could this happen? Felony defendants get better process than these people just got. And he's very upset immediately thereafter and tells this to Judge Davis. Number three. The record that he told Judge Davis. There was a memo. It was recorded in the memo, and the memo was circulated. What's the time frame? The minute he found out about it that day. Okay. And does he say, in my judgment, these are not at-will employees, or is he merely complaining that he thinks they should have been treated better or that he disagrees with their termination? Well, nobody asked him, wait, are they just cause or are they at-will? Well, I mean, he's the same lawyer she is. I mean, he would presumably know that if they're just cause versus at-will, it makes a whole lot of difference in what process they're due. Well, I mean, all we know is what was at-will. But we would find that whatever the import of that memo, we would find that in the record. The memorandum was 114 at trial. That's actually a disputed issue here because the judge below made us excise that portion on the theory that his immediate response wasn't either relevant. I think we see that it is highly relevant. Or if it was relevant, then it would be hearsay, which is a little strange because the rest of the memo was put into evidence. Well, I guess there would be a question about whether her knowledge immediately after the termination, to the extent she had it, could affect the qualified immunity analysis. In other words, whether, and I don't know, I'm not sure I know the resolution of this, but whether it's to be judged solely at the time of the initial termination decision or whether she acquires knowledge at a time when process could have been given and the issue could have been corrected. And I think you have kind of a time frame problem. But if anything that happened after termination is relevant, then that's highly relevant and it's not offered for the truth of the matter asserted. It goes to the knowledge the decision-maker had. I'm acting like a trial judge. I'm sorry. You're not. You're not. It's fine. You directed me to the post-termination time frame. One other point I would make there is that everybody agrees, post-termination, all the clerks are just cause. And I find that really interesting because I think in your decision, Judge Cole and Silberstein, you pointed to the fact that, okay, look, the replacement is hired as just cause. Isn't that an interesting, it's a piece of evidence that reflects on how people really saw this job. Here, all these clerks post-termination are treated as just cause, and that's undisputed. So what we have here, the defendants are arguing is that there's this donut hole where everyone around these people are just cause, and then after this case, everyone is just cause. It's just not my clients, and that that was so very uncertain and unclear. So let's talk about the time frame before the terminations occur to get to your point, Judge Gibbons. First, of course, we have that Nancy Engler did say, and I guess Mr. Fran did admit that she said, wait, wait, wait, I'm just cause. You also have Davis saying she knew Clinton Township had policies that applied to these folks. Mr. Fran stood up here and said, well, and one of the first colloquies we had was, didn't they ask for policies and didn't Judge Cannon not provide them? What's going on with that? But the fact of the matter is, your honors, she admits she knew there were policies. So on the one hand, she says, well, I asked for them and didn't get them, so I assume there were none. And on the other hand, she says, but I knew that they had policies. They had written policies that applied. So she is on notice that there are, I guess it's actual notice. I mean, it didn't come from Cannon. She did see that he fell down on the job there, but she had separate knowledge that there were policies. But having knowledge that there are policies doesn't mean that she has knowledge that those policies include some sort of just cause. Okay, so let me address that. Yes. She also admits she understands that the Supreme Court of the State of Michigan has said courts should follow funding units and that there's an administrative order to that effect. And she understands that Clinton Township has these just cause employees. So the funding unit here has just cause employees. So courts follow funding units. This funding unit had these just cause employees. She employed her own staff at the sister location as just cause employees. But they're union. Yes. And Judge Cannon's are not union employees. Yeah, she understands. So, again, it's like this donut theory that everybody around these people, the people down the hall in municipal clerks, her clerks, they're all union or civil servants or whatever. They're all just cause except for hers. My point, Judge, is not that you can say these pieces of evidence equal. I mean, she doesn't come in and say, I knew they were just cause. She does not say that. But look at the notice she had. Look at the red flags. I mean, it's not true, as Mr. Ferrand says, that this has to be a notice. I apologize. No, I just want to make sure I understand your argument. So to frame the issue, would you agree that the issue is whether Judge Davis was objectively unreasonable in making a determination that these employees were at-will employees? I think the United States Supreme Court has answered that for you by saying, is there a constitutional violation, yes or no? The jury held yes. Was it clearly established? Laudermill says yes. Then, if that's true, if then, then the official has imputed the knowledge that what they're doing is unconstitutional and if the defendant wants to argue, but wait, wait, wait, I still shouldn't have known, I still didn't have the knowledge, then what the Supreme Court has said in Harlow v. Furtzgerald is that's their burden and it's an extraordinary showing. Well, let's just assume that, for my purposes, the issue is whether Judge Davis was objectively unreasonable in reaching this conclusion at the time she did that these employees, these three terminated employees were at-will. I guess I'm trying to understand whether your argument is that she had sufficient information at that time and she just clearly reached the wrong conclusion, that there was sufficient information within her knowledge at that time, or does she just not do enough to obtain information that would have led her to the conclusion that these were just cause employees? It's the former. And that's what the district court held, is that this was a person imbued by the state with the duty of knowing. She was the person to know. And she had all of these pieces of evidence, and Judge Givens, your point is, isn't the real issue what she knew and what Nancy Engler is saying to her and all the rest of it, all these different data points, doesn't that lead the reasonable person, just any reasonable judge, simply to either pick up the phone and call the gentleman who knows. I don't think I'm glad she should have done anything further. Or if she genuinely doesn't know, to go out to the employees and just say, I'm deeming you all at will. I don't know how you can say a reasonable person couldn't, and according to her, faced with all this uncertainty, can decide not to ask the question and can decide not to render it clear. To me, I don't know that it figures in this analysis at all, but what the plaintiffs are claimed to have lied about was the job performance of Judge Cannon's wife and whether employees were requested to do personal errands for Judge Cannon and his wife. Is that right? That is the assertion of the defendants. And so Judge Cannon's interest in supplying policies might arguably have been enhanced at post-termination. Is that right? Not that that necessarily figures into the analysis, but I mean... And he did, apparently. I mean, he did provide them post-termination. That time frame isn't as clear in my mind because the pre-termination piece of this is where most of the case law lies. I agree. But again, your motivation point is exactly my point. When you tell someone, I'm about to make personnel decisions for three human beings, that's a different motivation than we sat through a two-hour long court merger meeting and then you didn't follow up by forwarding your inner office mail. I mean, that's what this really turns on. And I guess my point is, when Davis admits that she knew there were policies, the fact that she didn't get stuff through inner office mail or Cannon didn't pony up, I mean, she could chalk it up to he wasn't paying attention, he was busy, I don't know. But the fact is she admits she knew these policies existed. Okay. Well, thank you, Counselee. We've let you go a little bit beyond your time to us. It's an interesting case. Both attorneys have been able to use some extra time, and that's fine. You will have your rebuttal. Mr. Farran. Thank you, Judge. I want to just address the issues that you raised, if I could. First of all, during the consolidation process, Judge Davis and the State Court Administrator asked for policies and procedures from the Township, from Judge Cannon, from the Magistrate, from everybody involved in that consolidation process, the State Court Administrator and Judge Davis got none. Plaintiff counsel said that all Judge Davis had to do was meet with these employees ahead of time and tell them they're at-will employees and they would have become at-will employees. The record is clear that Judge Davis met with them before the SCAO investigation and told every employee, if you lie, if you withhold information during that proceeding, you will be terminated. The plaintiffs each testified in our case. They were at the meeting. They understood if they lied, they would be terminated, thus making them well aware of what the practice of the court was. If you lie during this, you're going to lose your job immediately. Number three, Judge Davis met with the employees before the terminations. Excuse me, post-termination, Judge Cannon made no comments to Judge Davis. In the record, Judge Davis testified specifically after these employees were terminated. In fact, Judge Cannon's wife was terminated. Judge Cannon came forward with nobody indicating that his wife or anybody else was a just cause employee. He made no comments to Judge Davis. He made no comments to the state court administrator saying that anybody was an employee. The allegation is that Judge Cannon made some off-the-cuff statement about a scorched-earth policy that the judge did not admit into evidence in our case, but he never came forward and said, wait a minute, these are just cause employees and you applied the wrong standard or you've got to give them a pre- or post-deprivation hearing of some kind. He never made any comment like that, although he continued to be judged at that court for a considerable time after that time. He wasn't convicted as a result of this investigation? I'm just curious. No, actually, there was a judicial tenure proceeding that was conducted in part because of what was going on at that court, but that happened later. I thought it was interesting. The policies of the court that were talked about involved pay and benefits because in a district court proceeding, you have a local funding unit. The local funding unit ends up paying the employees, so they adopt the policies and practices of the local funding unit related to that. There were no indications that any other policy relating to termination was ever adopted by the court. In fact, the only policy they rely upon is this disciplinary action procedure, which my point was cannot legally support this theory. I know, Judge, you have an issue with revisiting that, so I won't go back into it. It sounds, though, like from Judge Davis' testimony, she had some ambiguity in her mind as to what these policies provided. She had ambiguity in her mind because there was nothing in writing. This court had never adopted anything in writing. It had never adopted anything formally. Everything that they talked about in this case, Judge Cannon's practices, were not obvious to anybody in this case. And that is why she is entitled to qualified immunity because she and every other person who looked at it said these are at will employees. Just one last question. Is there any more that she could have reasonably done to determine the legitimate expectations of these employees, such as asking the employees? Absolutely. She could have asked the employees, and she did talk to a number of employees. She testified. She talked to the deputy court administrator. She talked to other employees. And, in fact, every other employee testified in this case by affidavit that there were no policies and procedures. We were always told we were at will employees. Judge Cannon called meetings to bring us in and tell us we didn't like it here, we could leave at any time. That's what every other employee testified to. Had she done further investigation, that's what she would have found. There's no cases here. Didn't Judge Cannon's testimony exactly where I remember seeing this, but that he had these sort of general policies that also practices that in effect had a just cause termination? Yes. He said it would have been my practice to provide just cause before terminating people. He said that two years after in a deposition, right? And the significance of that is this. His testimony is totally irrelevant because it has to be in a policy and circulated to the employees for a legitimate expectation theory to apply. The fact that he said that two years later doesn't change any part of that. Okay. Well, thank you, counsel, for your arguments today. We do appreciate them. Thank you.